# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### EASTERN DIVISION

KIMBERLY WALL )
4008 Brinkman Dr )
Wilmington, NC 28405 )
          Plaintiff, )
 )
       v. )   **COMPLAINT FOR DAMAGES**
 )
AT&T ENTERPRISES, LLC. )   **JURY DEMAND ENDORSED**
208 S Akard Street )   **HEREIN**
Dallas, TX 75202 )
 )
    **Serve also:** )
    AT&T ENTERPRISES, LLC, C/O CT )
    CORPORATION SYSTEM )
    160 Mine Lake Ct. Ste 200 )
    Raleigh, NC 27615 )
 )
 )
         Defendant. )

Plaintiff, Kimberly Wall, by and through undersigned counsel, as her Complaint against

Defendant(S), states and avers the following:

## PARTIES

1. Wall is a resident of the city of Wilmington, county of New Hanover, state of North Carolina.

2. AT&T Enterprises, LLC ("AT&T") is a foreign limited liability company has is principal

    office located at 208 S Akard Street, Dallas, TX 75202.

*3.* AT&T was at all times hereinafter mentioned an employer within the meaning of 42 U.S.C.

    2000e-2 *et seq.*; 42 U.S.C. 126 § 12101 *et seq*.

4. AT&T was at all times hereinafter mentioned, was a "person" within the meaning of 29 USC

    § 203(a).

## JURISDICTION & VENUE

5. AT&T hires citizens of the state of North Carolina, contracts with companies in North Carolina, and owns or rents property in North Carolina. As such, the exercise of personal jurisdiction over AT&T comports with due process.

6. This cause of action arose from or relates to the contracts of AT&T with North Carolina residents, thereby conferring specific jurisdiction over AT&T.

7. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 1341 inasmuch the matters in controversy are brought pursuant to Americans with Disabilities Act ("ADA"), 42 U.S.C. 126 § 12101 *et seq*. and the Civil Rights Act of 1964, 42 U.S.C. 2000e-2 *et seq*.

8. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Wall's state law claims because those claims derive from a common nucleus of operative facts.

9. Venue is proper in this District because the wrongs herein alleged occurred in this District.

## ADMINISTRATVE PROCESS

10. Within 180 days of the conduct alleged below, Wall filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 433-2025-00733 against AT&T operating at 208 S Akard Street, Dallas, TX 75202.

11. On or about September 3, 2025 the EEOC issued and mailed a Notice of Right to Sue letter to Wall regarding the Charges of Discrimination brought by Wall against AT&T in EEOC Agency Charge No. 433-2025-00733.

12. Wall received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1) - which has been attached hereto as Plaintiff's Exhibit A.

13. Wall has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

14. Wall has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

15. Wall is a former employee of AT&T.

16. Wall is female.

17. Wall is 51 years old.

18. Wall is a two-time breast cancer survivor.

19. As a result of Wall's breast cancer, Wall suffers from complex regional pain syndrome.

20. As a result of Wall's breast cancer, Wall suffers from post-mastectomy pain syndrome.

21. As a result of Wall's breast cancer, Wall suffers from neuropathy. (together with Wall's complex regional pain syndrome and post-mastectomy pain syndrome "Wall's Disabilities")

22. Wall's Disabilities cause debilitating pain.

23. Wall's Disabilities cause uncontrollable muscle spasms.

24. Wall's Disabilities require her to manipulate her reconstructed chest area to manager her symptoms.

25. Wall's Disabilities substantially interfere with Wall's ability to concentrate, sit for extended periods of time, interact with others, perform daily tasks, and work.

26. Wall's Disabilities constitute a physical impairment.

27. Wall is disabled.

28. In the alternative, AT&T perceived Wall to be disabled.

29. AT&T was aware of Wall's record of disabilities.

30. Despite Wall's actual or perceived disabling condition, Wall was able to fully perform her essential job functions.

31. AT&T hired Wall as a call center representative.

32. Over time, AT&T promoted Wall to Lead.

3

33. AT&T hired Wall as a Lead for its project management and development department.

34. AT&T hired Wall on or about August 12, 2002.

35. AT&T hired Wall as a result of her skills and experience.

36. AT&T allowed Wall to work as a remote worker starting in or around 2010.

37. In or around 2012, AT&T approved Wall to move to Wilmington, NC and work remotely.

38. Wall was qualified for her position.

39. Wall continued to be qualified for her position as a result of meeting AT&T's legitimate business expectations.

40. In or around May, 2023, AT&T implemented a mandatory return to work office policy.

41. AT&T's mandatory return to work policy applied to Wall.

42. During the announcement of AT&T's mandatory return to work policy, other employees indicated concerns about losing older workers as a result of the return to work policy.

43. In response to the concerns about losing older workers, CEO John Stankey responded that "We need young people."

44. As a result of the mandatory return to work policy, Wall requested accommodations. ("Wall's First Request for Accommodations")

45. Wall's First Request for Accommodations requested to continue remote work.

46. Wall's First Request for Accommodations was reasonable.

47. Wall's First Request for Accommodations would not cause undue burden on AT&T.

48. Wall's First Request for Accommodations was supported by doctor's notes.

49. Wall's doctor's notes specifically requested remote work because non-remote work posed a danger to Wall's health.

4

50. Wall's doctor's notes specifically requested remote work because non-remote work would inhibit Wall's ability to complete her essential job functions.

51. In response to Wall's First Request for Accommodations, AT&T asked her to resubmit her request for accommodations.

52. Wall resubmitted Wall's First Request for Accommodations on or about June 13, 2023.

53. In response to Wall's First Request for Accommodations, AT&T rejected Wall's request to work remotely.

54. In response to Wall's First Request for Accommodations, AT&T did not identify an undue burden on AT&T that would be caused by allowing Wall to continue to work remotely.

55. In response to Wall's First Request for Accommodations, AT&T stated that it would provide a private office in Georgia.

56. A private office would not accommodate Wall's disability.

57. Wall confirmed to AT&T that neither offered accommodation would allow Wall to perform the essential functions of her position.

58. Instead of continuing an interactive process, AT&T told Wall that she could either take the accommodation or be terminated.

59. Immediately after Wall's First Request for Accommodations, Wall began to receive negative feedback regarding her performance.

60. In particular, Wall began to receive negative feedback from Ian Braucksieker.

61. Braucksieker is male.

62. Braucksieker is not disabled.

63. Braucksieker is substantially younger than Wall.

64. Braucksieker had the authority to hire, fire, or discipline employees.

5

65. Braucksieker had the authority to hire, fire, or discipline Wall.

66. Braucksieker was brought into the conversation for Wall's First Request for Accommodations.

67. In particular, Wall began to receive negative feedback from Derek Stapleton.

68. Stapleton is male.

69. Stapleton is not disabled.

70. Stapleton is substantially younger than Wall.

71. Stapleton had the authority to hire, fire, or discipline employees.

72. Stapleton had the authority to hire, fire, or discipline Wall.

73. Stapleton was brought into the conversation for Wall's First Request for Accommodations.

74. Braucksieker began to issue negative feedback to Wall because of her disability.

75. Braucksieker began to issue negative feedback to Wall because of her perceived disability.

76. Braucksieker began to issue negative feedback to Wall in retaliation for Wall's First Request for Accommodations.

77. Stapleton began to issue negative feedback to Wall because of her disability.

78. Stapleton began to issue negative feedback to Wall because of her perceived disability.

79. Stapleton began to issue negative feedback to Wall in retaliation for Wall's First Request for Accommodations.

80. Wall was also treated differently than her younger peers. ("AT&T's Age Discrimination")

81. Wall outperformed her younger peers.

82. Wall's younger peers included Sean McNett.

83. McNett is substantially younger than Wall.

84. McNett is not disabled.

85. McNett is male.

86. Wall's younger peers included Alex Rahe.

87. Rahe is substantially younger than Wall.

88. Rahe is not disabled.

89. Rahe is male.

90. AT&T's Age Discrimination included granting McNett opportunities over Wall.

91. AT&T's Age Discrimination included granting Rahe opportunities over Wall.

92. The opportunities were more projects with better visibility which would lead to promotions.

93. AT&T's Age Discrimination included granting McNett preferential treatment over Wall.

94. AT&T's Age Discrimination included granting Rahe preferential treatment over Wall.

95. AT&T gave Rahe the same pay that AT&T paid Wall after 20 years, despite just graduating college and having fewer job responsibilities.

96. AT&T reassigned some of Wall's prior job responsibilities to Rahe and distributed them to two other people to share, despite paying Rahe the same as what Wall made.

97. Wall was also treated differently than her male peers. ("AT&T's Gender Discrimination")

98. Wall was treated differently from Cedric Laboard.

99. Laboard is male.

100. Laboard is not disabled.

101. AT&T's Gender Discrimination included paying Laboard more than Wall.

102. AT&T's Gender Discrimination included paying Laboard more than Wall despite Wall's superior performance.

103. AT&T's Gender Discrimination included paying Laboard more than Wall despite Wall's holding the same title or higher level responsibilities.

104. Wall was treated differently from Ryan Wager.

7

105. Wager is male.

106. Wager is not disabled.

107. AT&T's Gender Discrimination included paying Wager more than Wall.

108. AT&T's Gender Discrimination included paying Wager more than Wall despite Wall's superior performance.

109. AT&T's Gender Discrimination included paying Wager more than Wall despite Wall's holding higher level responsibilities.

110. On or about August 3, 2023, Wall requested short term disability leave for a surgery to alleviate symptoms from Wall's disability. ("Wall's Second Request for Accommodations")

111. AT&T granted Wall's Second Request for Accommodations.

112. AT&T placed Wall on short term disability leave.

113. After placing Wall on short term disability leave, AT&T closed Wall's accommodations request.

114. Wall's short term disability leave lasted six months.

115. Shortly before the six months ended, Wall requested an accommodation for remote work again. ("Wall's Third Request for Accommodations")

116. Wall's Third Request for Accommodations requested to continue remote work.

117. Wall's Third Request for Accommodations was reasonable.

118. Wall's Third Request for Accommodations would not cause undue burden on AT&T.

119. Wall's Third Request for Accommodations was supported by doctor's notes.

120. Wall's doctor's notes specifically requested remote work because non-remote work posed a danger to Wall's health.

121. Wall's doctor's notes specifically requested remote work because non-remote work would inhibit Wall's ability to complete her essential job functions.

122. In response to Wall's Third Request for Accommodations, AT&T rejected Wall's request to work remotely.

123. In response to Wall's Third Request for Accommodations, AT&T did not identify an undue burden on AT&T that would be caused by allowing Wall to continue to work remotely.

124. In response to Wall's Third Request for Accommodations, AT&T stated that it would provide a private office in Georgia.

125. A private office still would not accommodate Wall's disability.

126. Wall confirmed again to AT&T that neither offered accommodation would allow Wall to perform the essential functions of her position.

127. Instead of continuing an interactive process, AT&T told Wall that she could either take the accommodation or be terminated.

128. After rejecting Wall's Third Request for Accommodations, AT&T turned Wall's short term disability into an employed leave of absence running alongside her long term disability.

129. AT&T set Wall's leave of absence to end on or about August 3, 2024.

130. Wall submitted another request for accommodation on or about August 1, 2024. ("Wall's Fourth Request for Accommodations").

131. Wall's Fourth Request for Accommodations requested to continue remote work.

132. Wall's Fourth Request for Accommodations was reasonable.

133. Wall's Fourth Request for Accommodations would not cause undue burden on AT&T.

134. Wall's Fourth Request for Accommodations was supported by doctor's notes.

135. AT&T allows 30 days from the request for accommodation to submit all required paperwork.

136. AT&T allowed wall additional time before terminating Wall's employment to complete Wall's Fourth Request for Accommodations.

137. Wall submitted the required paperwork for Wall's Fourth Request for Accommodation on or about August 28, 2024.

138. On or about September 19, 2024, AT&T instructed Wall to submit an updated medical request stating that the only way that Wall could return to work was remotely.

139. On or about October 4, 2024, Wall amended Wall's Fourth Request for accommodations with the supporting paperwork stating that Wall required remote work to be able to return to work.

140. On or about October 31, 2024, AT&T denied Wall's Fourth Request for Accommodation and stated that Wall could either return to work in person or be terminated and remain on long term disability.

141. At the time that AT&T rejected Wall's Fourth Request for Accommodations, Wall was able to work remotely.

142. An option to resign or be fired is a termination of employment.

143. AT&T forced Wall to resign.

144. AT&T terminated Wall.

145. AT&T terminated Wall because of her gender.

146. AT&T terminated Wall because of her age.

147. AT&T terminated Wall because of her disability.

148. AT&T terminated Wall because of her perceived disability.

149. AT&T terminated Wall's employment in retaliation for Wall's First Request for Accommodations.

150. AT&T terminated Wall's employment in retaliation for Wall's Second Request for Accommodations.

151. AT&T terminated Wall's employment in retaliation for Wall's Third Request for Accommodations.

152. AT&T terminated Wall's employment in retaliation for Wall's Fourth Request for Accommodations.

153. After AT&T terminated Wall, AT&T replaced Wall with Laboard.

154. As a result of Defendant's conduct, Wall suffered, and will continue to suffer damages.

## COUNT I: <u>DISABILITY DISCRIMINATION</u>

155. Wall restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

156. Wall suffers from a disability.

157. Wall is disabled.

158. In the alternative, AT&T perceived Wall as being disabled.

159. Wall's condition constituted a physical impairment.

160. Wall's condition substantially impaired one or more of her major life activities including working.

161. AT&T perceived Wall's condition to substantially impair one or more of her major life activities including working.

162. AT&T treated Wall differently than other similarly-situated employees based on her disabling condition.

163. AT&T treated Wall differently than other similarly-situated employees based on her perceived disabling condition.

164. On or about November 7, 2024, Defendant terminated Wall's employment without just cause.

165. Defendant terminated Wall's employment based her disability.

166. Defendant terminated Wall's employment based her perceived disability.

167. AT&T violated The American with Disabilities Act (ADA) section.

168. As a direct and proximate result of Defendant's conduct, Wall suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT II: <u>DISABILITY DISCRIMINATION - FAILURE TO ACCOMODATE IN VIOLATION OF THE AMERICANS WITH DISABILITY ACT</u>

169. Wall informed AT&T of her disabling condition.

170. Wall requested accommodations from AT&T to assist with her disabilities.

171. Wall's requested accommodations were reasonable.

172. There was an accommodation available that would have been effective and would have not posed an undue hardship to AT&T.

173. AT&T failed to engage in the interactive process of determining whether Wall needed an accommodation.

174. AT&T failed to provide an accommodation.

175. AT&T violated The Americans with Disabilities Act (ADA) 42 U.S.C. 126 § 12101 et seq.

176. As a direct and proximate result of AT&T's conduct, Wall suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT III: <u>RETALIATION IN VIOLATION OF THE ADA</u>

177. Wall restates each and every paragraph of this complaint as if it were fully restated herein.

178. Pursuant to 42 U.S.C. § 12112(b)(5)(A), requesting reasonable accommodations is a protected activity.

179. Wall engaged in a protected activity when she submitted her Request for Reasonable Accommodation.

180. Wall engaged in a protected activity when she filed her Charge of Discrimination with the EEOC.

181. AT&T terminated Wall because of Wall's First Request for Accommodations.

182. AT&T terminated Wall because of Wall's Second Request for Accommodations.

183. As a result of AT&T's terminating Wall because of her requests for accommodations. Wall suffered damages including but not limited to lost wages.

184. In its actions as alleged above, AT&T acted with malice or reckless indifference to Wall's rights, thereby entitling Wall to an award of punitive damages.

185. To remedy the violations of Wall's rights, secured by 42 U.S.C § 12101 et seq., Wall requests that the Court award her the relief prayed for below

## COUNT IV: <u>GENDER DISCRIMINATION</u>

186. Wall restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

187. Wall is a member of a statutorily protected class based on her gender under Title VII of the Civil Rights Act of 1964.

188. Defendants treated Wall differently than other similarly situated employees based on her gender.

189. Defendants discriminated against Wall on the basis of her gender throughout her employment with the company.

190. Defendants terminated Wall's employment without just cause.

191. Defendants terminated Wall's employment based on her gender.

192. As a direct and proximate result of Defendants' conduct, Wall suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT V: <u>AGE DISCRIMINATION IN VIOLATION OF THE ADEA</u>

193. Wall restates each and every paragraph of this complaint as if it were fully restated herein.

194. Pursuant to 29 U.S.C. § 623(a), it is an unlawful employment practice for an employer to discriminate against an employee "because of such individual's age."

195. At the time of Wall's termination, Wall was 51 years of age.

196. For the entirety of her employment with AT&T, Wall was fully qualified for her position.

197. AT&T treated Wall differently than other similarly situated employees who were outside the protected class.

198. AT&T terminated Wall's employment on or about November 7, 2024.

199. AT&T violated the ADEA by discriminating against Wall based on her age.

200. In its discriminatory actions as alleged above, AT&T acted with malice or reckless indifference to the rights of Wall, thereby entitling Wall to an award of punitive damages.

201. To remedy the violations of Wall's rights, secured by 29 U.S.C. § 621 et seq., Wall requests that the Court award her the relief prayed for below.

## <u>DEMAND FOR RELIEF</u>

WHEREFORE, Kimberly Wall demands from Defendants the following:

(a) Issue an order requiring AT&T to restore Wall to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(b) An award against each Defendant of compensatory and monetary damages to compensate Wall for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $ 25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $ 25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Wall's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/ *Evan G. Gungor, Esq.*
Evan Gungor (60902)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
5540 Centerview Drive
Suite 200B
Raleigh, NC 27606
Phone: (980) 332-4688
Fax:    (216) 291-5744
Email: evan.gungor@spitzlawfirm.com

*Attorneys For Plaintiff*
*Kimberly Wall*

## JURY DEMAND

Plaintiff Kimberly Wall demands a trial by jury by the maximum number of jurors permitted.

/s/ *Evan Gungor*
Evan G. Gungor, Esq. (60902)